17-4142-cv
*Pipefitters Union Local 537 Pension Fund v. American Express Co.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of May, two thousand nineteen.

PRESENT:   AMALYA L. KEARSE,
           RICHARD C. WESLEY,
           DENNY CHIN,
                   *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PIPEFITTERS UNION LOCAL 537 PENSION
FUND,
                   *Plaintiff-Appellant,*

PLUMBERS & STEAMFITTERS LOCAL 137
PENSION FUND, individually and on behalf
of all others similarly situated,
                   *Plaintiff,*

                   v.                                          17-4142-cv

AMERICAN EXPRESS COMPANY, KENNETH
I. CHENAULT, JEFFREY C. CAMPBELL,
                   *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FOR PLAINTIFF-APPELLANT:          THOMAS A. DUBBS, Labaton Sucharow LLP, New York, New York; Samuel H. Rudman, Douglas S. Wilens, Robbins Geller Rudman & Dowd LLP, Melville, New York, and Boca Raton, Florida.

FOR DEFENDANTS-APPELLEES:          STEPHEN L. ASCHER (Richard F. Ziegler, Jeremy H. Ershow, *on the brief*), Jenner & Block LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Pipefitters Union Local 537 Pension Fund ("Pipefitters") appeals the district court's November 28, 2017 judgment dismissing its amended complaint (the "Complaint"), alleging that defendants-appellees American Express Company and two of its executives (collectively, "AmEx") violated federal securities laws.   By memorandum opinion and order entered September 30, 2017, the district court granted AmEx's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

The Complaint concerns AmEx's co-branding agreement with Costco Canada (the "Costco Canada Agreement"), the non-renewal of which was announced in

September 2014, and its separate co-branding agreement with Costco United States (the "Costco U.S. Agreement"), the non-renewal of which was announced in February 2015. In relevant part, the Complaint asserts that AmEx violated the securities laws by making (1) "materially false and misleading statements concerning the renewal of the Costco U.S. Agreement" and (2) "materially false and misleading statements contrasting the Costco Canada Agreement [with] the Costco U.S. Agreement, which [AmEx] had a duty to update." J. App'x at 65-69 (capitalizations omitted). Pipefitters argues that the district court erred in dismissing these claims.[1]

"We review the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019) (internal quotation marks omitted). To avoid dismissal of a cause of action under Section 10(b) of the Securities Exchange Act of 1934, a complaint must plausibly allege "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Id.* (internal quotation marks and alteration omitted).

A misrepresentation is material if (1) "there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares of stock" and (2) it "significantly altered the total mix of information made

---

[1]     Pipefitters does not appeal the dismissal of the other causes of action contained in the Complaint.

3

available" to a reasonable investor. *Id.* at 63 (internal quotation marks omitted). The statement must be misleading, "evaluated not only by literal truth, but by context and manner of presentation." *Id.* (internal quotation marks omitted). "On a motion to dismiss, a complaint may not be properly dismissed unless the misstatements are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015) (internal quotation marks omitted).

## I.    *Duty to Update*

On September 18, 2014, *Bloomberg* reported that the Costco Canada Agreement would not be renewed. The article quoted an AmEx representative as saying, "This is very specific and exclusive to Canada. There are separate contracts for AmEx's U.S. Costco Relationship." J. App'x at 68.[2] On October 15, 2014, AmEx held a conference call, during which AmEx's Senior Vice President and Chief Financial Officer Jeffrey Campbell reiterated:

> [W]e have separate agreements with Costco in each of the several markets where we maintain a partnership, and have a longer and more significant relationship with Costco in the US, dating back over 15 years. As with any long-term partnership, we work with Costco on an ongoing basis to find ways to drive value for both parties going forward, never losing sight of the fact that we are serving the same customers.

---

[2]    The alleged misstatements are drawn from the Complaint. Emphases are omitted throughout.

4

*Id.* Pipefitters contends that these statements implied the continuation of the Costco U.S. Agreement and became false and misleading and triggered a duty to update when the prospects of renewal of the Costco U.S. Agreement deteriorated -- that is, when Costco likened AmEx to a "ketchup" supplier and described AmEx as "just another vendor." *Id.* at 32 ("If I can get cheaper ketchup somewhere else, I will."). On February 12, 2015, AmEx issued a press release confirming that the Costco U.S. Agreement would expire in 2016.

"A duty to update may exist when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event." *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 110 (2d Cir. 1998). There is, however, "no duty to update vague statements of optimism or expressions of opinion," "statements [that] are not material," or statements that are "not forward looking and do[] not contain some factual representation that remains 'alive' in the minds of investors as a continuing representation." *Id.*

The district court correctly concluded that AmEx was under no duty to update the October 15, 2014 statements as a matter of law because they concerned only existing facts that were not forward looking. Pipefitters argues that the statements had a "forward intent and connotation." Appellant's Br. at 19-20 (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 17 (1st Cir. 1990) (en banc)). Its reliance on *Backman* is misplaced. There, the First Circuit held that "[e]ven if forward-looking, [the statement]

5

remained precisely correct" and thus did not trigger a duty to update. 910 F.2d at 17.

The same is true of the statements here. It was and remained true after the "ketchup"

comment that the Costco Canada Agreement was "very specific and exclusive to

Canada," that "[t]here [were] separate contracts for AmEx's U.S. Costco relationship,"

and that AmEx had a "longer and more significant relationship with Costco in the US,

dating back over 15 years." J. App'x at 68. Campbell's statement that AmEx "work[s]

with Costco on an ongoing basis to find ways to drive value for both parties going

forward," *id.*, was at worst an "expression[] of . . . corporate optimism," which "[did] not

give rise to securities violations," *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). To

the extent these statements implicitly downplayed the risk that the non-renewal of the

Costco Canada Agreement foretold the non-renewal of the Costco U.S. Agreement, such

a connotation was "not sufficiently concrete, specific or material to impose a duty to

update." *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d at 110; *see also In re Time Warner

Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). For these reasons, the district court

correctly concluded that AmEx had no duty to update and dismissed the claim.

## II.   *Materially Misleading Statements*

On January 21, 2015, AmEx held its fourth quarter 2014 earnings call.

Responding to a question about when investors "might hear on the Costco U.S. deal,"

Campbell responded:

> Well, I appreciate the question. Costco is a very important and
> long-term partner of ours. Our U.S. relationship goes back to the
> 1990s. We think we've been great partners and have created a lot

6

of value for their members, our [c]ard [m]embers and for both companies. I would point out to you that I don't think we've said anything about any ongoing discussions we're having with Costco. Obviously, with very important partners we are always working every day to evolve the relationship to make it better and frankly to make sure it's working for both parties. You can presume we're doing that with Costco as we're doing it with all of our partners at any time and if and when we have any news as we did with Delta, which we chose to renew early, we would certainly tell you.

J. App'x at 44. Pipefitters alleges that these statements amount to a denial "that AmEx was making any special efforts with respect to the Costco U.S. Agreement," which purportedly "was misleading because it signaled that there were no active, ongoing negotiations with Costco concerning renewal of the Costco U.S. Agreement." Appellant's Br. at 23-24. In fact, according to the Complaint and documents incorporated by reference, AmEx and Costco had begun preliminary negotiations at least two months earlier.

The district court correctly concluded that no reasonable investor could have found Campbell's statements false, misleading, or incomplete. Campbell did not state that no negotiations with Costco were underway nor did he state that AmEx was only working with its partners on routine matters. He instead told investors that they could "presume" that AmEx was working with its "very important partners . . . every day to evolve the relationship to make it better." J. App'x at 44. And he prefaced this vague statement by noting that he did not "think [AmEx has] said anything about any ongoing discussions [it was] having with Costco." *Id.* Moreover, Campbell's reference

7

to the early renewal of its co-branding agreement with Delta, which AmEx did not discuss until a renewal was announced, only confirmed that AmEx would not comment on renewal negotiations with Costco while such negotiations were underway. *See id.* ("[I]f and when we have any news as we did with Delta, . . . we would certainly tell you."). No reasonable investor could have interpreted these statements as denying the existence of any ongoing renewal discussions with Costco. Thus, the district court properly granted AmEx's motion to dismiss.

\* \* \*

We have considered all of Pipefitters's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8